(98 South. 90)

No. 23899.

TAYLOR v. VICKSBURG, S. & P. RY. CO.

(Nov. 19, 1923.)

*(Syllabus by Editorial Staff.)*

1. Railroads &#9178;274(2)—Drayman falling between car and platform held neither an invitee nor licensee.

Where a drayman, about to remove certain goods from a freight car, instead of stopping on his way at the freight office to pay freight charges, drove up to the car standing at a loading platform, and started to pass through the car to get to the freight office over the platform, and fell between the car and the platform, because of the slipping of the iron plate bridging the space between the two, *held*, that, while he had a right to drive up to the freight car and enter it to get the merchandise, he had no right to cross through onto the platform, and in doing so he was neither an invitee nor licensee, and the carrier owed him no duty other than to refrain from wantonly and designedly causing him to be injured.

2. Railroads &#9178;278(1)—Drayman injured by falling on insecure iron plate held negligent.

Where a drayman without authority crossed through a freight car onto the carrier's platform to get to the freight office, and was injured when an iron plate bridging the space between the car and the platform slipped, precipitating him to the ground, *held*, that plaintiff was negligent in failing to observe the condition of the plate when he stepped thereon, and was therefore not entitled to recover.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Fred M. Odom, Judge.

Action by Thomas Brett Taylor against the Vicksburg, Shreveport & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

John M. Munholland, of Monroe, for appellant.

Stubbs, Theus, Grisham & Thompson, of Monroe, for appellee.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

LECHE, J. Plaintiff appeals from a judgment rejecting his demand for damages arising from physical injuries, which he alleges to have suffered as a result of the carelessness and negligence of the defendant. The manner in which the injury was inflicted is not disputed, and the controversy is confined to the extent of the legal duty, if any there was, on the part of defendant towards the plaintiff, in maintaining a passageway from a box car to a freight platform, in such condition as to insure a safe passage over it by plaintiff.

Defendant's freight depot in the city of Monroe, where the accident happened, is situated north of and near the main line of its railroad, which runs approximately east and west. The building including an inclined approach or ramp on its western end, is about 350 feet in length, and on its north side attached thereto and forming part thereof is an open platform, about 8 feet wide. The floor of the platform and of the warehouse is of such height above the ground as to be about level with the floor of the average box car. This platform is used to load and unload cars of merchandise. The cars are switched on a track lying parallel with the platform at such distance from it as to facilitate the moving of freight from the one to the other. The average open space between the edge of the platform and the floor of a box car is said to be about 24 inches. When moving heavy merchandise from a freight car into the warehouse, it is necessary to load such freight on roller trucks, and, in order to bridge the open space between the platform and the car, a plate of sheet steel or iron, five-sixteenths of an inch thick, measuring in width and length 36 by 42 inches, is used by resting one end of it on the floor of the car and the other end on the floor of the platform. The track along the platform is known as the warehouse or house track. There is another track running almost parallel with the warehouse track about 40 or 50 feet north of it, known as the team track, upon which are placed freight cars containing commodities shipped in carload lots. Defendant's freight terminal, consisting of its warehouse with platforms and switch tracks as above described, is inclosed with a high iron fence, and the only way in which teams and vehicles may approach the tracks is through a gate leading from the street, about 50 feet west of the ramp or inclined platform on the western end of the depot. The east end of the depot, where the station

agent's office is located, however, is accessible for all business purposes of shippers or receivers of freight from the street, by steps connecting the office with the sidewalk.

Plaintiff is a drayman in the city of Monroe, and in the pursuit of his occupation must have become quite familiar with the location and situation of defendant's freight terminals. He must of necessity have become cognizant of the mode and manner in which freight is delivered by defendant.

He knew that deliveries to local merchants and others, directly from freight cars, were confined to commodities received in carload lots; that such cars were always spotted on the team track; and that merchandise received in broken lots was delivered to consignees, not from the cars, but from the warehouse into which such merchandise had previously been moved from the cars located in the house track, by freight handlers employed by defendant.

It appears that, on the occasion when this accident took place, defendant did, at the special request of a consignee and for the latter's accommodation, permit the delivery of merchandise transported in less than a carload lot to be made from a car located on the warehouse track, and that plaintiff was employed by the consignee to receive and haul the same.

Plaintiff accordingly drove his team into defendant's freight yard, along the house track, and near the north door of the car containing the merchandise, so that he could move the merchandise directly from the car into his wagon. He testifies that he passed through the car in order to get to the office and pay freight charges on the goods he was about to haul; that in order to reach the platform along the warehouse he stepped on the iron plate bridging the space between the car and the platform; that the iron plate slipped off the car sill; and that his body and the iron plate both went down to the

ground in the open space; and that he fell against the edge of the plate, thus causing the injury for which he is claiming compensation in damages.

The evidence also shows that it was very unusual for merchandise to be delivered from cars on the house track. That evidence is supported by clear logical deduction from other uncontested facts. It would be poor and risky practice on the part of a railroad company to permit draymen and others to enter merchandise cars and pick out of a mixed lot belonging to various and sometimes numerous consignees such goods as they might be employed to haul for one particular consignee. It is only reasonable that the railroad company should first examine and check the contents of such cars in order to protect itself from any liability as a common carrier, and that the proper method to do this is to unload the contents of the car into the warehouse, where the merchandise can be examined as to its condition, checked as to the number of packages, and assorted according to its consignment. Under these circumstances, the duty of maintaining safe passageway from a merchandise car on the house track to the warehouse is a matter that only concerns freight handlers and employees of the railroad company who are engaged in moving the contents of such cars into the warehouse. The iron plate bridge is necessary to roll the truck from the car to the platform, and the only persons who use such trucks are employees of the railroad company. The open space of 24 inches can otherwise easily be stepped across by persons who are physically active and strong enough to engage in the handling of freight.

It therefore amply appears from the evidence that the passage from the freight car to the unloading platform was designed to be used solely by the employees of the defendant company, and that the iron plate bridging the open space was placed there for the rolling of trucks, and not merely to be walked upon; and therefore the paramount issue involved in this case is what right, if any, did plaintiff have to use this passageway and to step upon the iron bridge?

It is not denied that plaintiff under special permission of defendant had the right to drive up to the freight car and enter the same to get the merchandise which he had been hired to haul on his dray, but that did not include the right to cross through the car onto the platform. He testifies that he and other draymen had however, often done so without remonstrance on the part of the agents and employees of defendant, and that upon this occasion he had adopted this route as being the shortest to reach the office where he had to go and settle freight charges. The regular mode of transacting the business incident to the receiving of freight was to go first from the street to the office situated on the east end of the building, ascertain if the freight had arrived, present the bill of lading when so required, and pay the charges before attempting to move the freight. But plaintiff, it seems, passed by the office without entering it as he should first have done, then went into the car, and from the car attempted to pass to the platform, then through the depot to get to the office in order to pay the freight charges. He therefore cannot rightfully claim that either the business in which he was engaged or convenience required him to go by the route which he attempted to take in order to obtain delivery of his employer's merchandise. He was neither asked nor invited, nor was he required by his business to pass from the freight car to the platform. He took that route to suit his convenience, but that route only became convenient to him after he had failed to stop at the office on his way to the freight yard.

[1] It seems to us that, under these circumstances, plaintiff was neither an invitee nor a licensee, and that defendant owed him

no other duty than to refrain from wantonly and designedly causing him to be injured.

[2] Our learned brother of the trial court believed that plaintiff was negligent in failing to observe the condition of the iron bridge when he stepped upon it, and therefore rejected plaintiff's demand.

We believe his judgment is correct, and it is therefore affirmed.